NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| YESSICA CRUZ,<br><br>  Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | Civil Action No. 08-3721 (SRC)<br><br>OPINION |

**CHESLER**, District Judge

    This matter comes before the Court on the appeal by Evelyn Cruz ("Ms. Cruz"), on behalf of her minor daughter, Yessica Cruz ("Plaintiff"), of the final decision of the Commissioner of Social Security ("Commissioner") determining that Plaintiff is not eligible for Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). Plaintiff asserts that substantial evidence exists in the administrative record to support a finding of disability and asks this Court to reverse the decision of the Commissioner or, in the alternative, to remand these claims to the Commissioner for reconsideration. This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3)[1] and, having considered the submissions of the parties without oral argument pursuant to L. Civ. R. 9.1(b), finds that the Commissioner's decision must be **REVERSED** and **REMANDED** for further proceedings in accordance with this opinion.

---

[1] These sections of the Act provide that any individual may obtain a review of any final decision of the Secretary of Health and Human Services ("Secretary") made subsequent to a hearing to which he or she was a party. The federal district court for the district in which the plaintiff resides is the appropriate place to bring such action. 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

Ms. Cruz, mother of Plaintiff, Yessica Cruz, filed an application on behalf of Plaintiff for SSI on October 14, 2005, claiming disability due to asthma and a learning disorder. (Tr. 185.)[2] Plaintiff's application was denied at the initial and reconsideration levels of appeal (Tr. 40-42; 43-48) and Plaintiff requested a hearing[3] (Tr. 55) (Exhibit 1B). A hearing was held before Administrative Law Judge John M. Farley (the "ALJ") on December 14, 2007. (Tr. 35; 183-203.) The ALJ issued a decision on January 16, 2008, finding that Plaintiff had failed to demonstrate a severe impairment and, thus, was not disabled within the meaning of the Act. (Tr. 17-28.) The following is a summary of his findings:

1. The claimant was born on March 11, 1990. Therefore, she was an adolescent on October 14, 2005, the date the application was filed, and is currently an adolescent (20 C.F.R. 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 C.F.R. 416.924(b) and 416.972).

3. The claimant has the following medically determinable impairments: asthma, oppositional defiant disorder and an adjustment disorder (20 C.F.R. 416.924(c)).

4. The claimant's impairments cause no more than minimal functional limitations; therefore, the claimant does not have an impairment or combination of impairments that is severe (20 C.F.R. 416.924(c)).

5. The claimant has not been disabled, as defined in the Social Security Act, since October 14, 2005, the date the application was filed (20 C.F.R. 416.906 and 416.924(c)).

(Tr. 26-28.) Based on these findings, the ALJ concluded that Plaintiff was not eligible for SSI under § 1614(a)(3)(C) of the Act. (Tr. 28.) Plaintiff then requested a review of the decision by

---

[2] The Act instructs the Secretary to file, as part of her answer, a certified copy of the transcript of the record, including any evidence used to formulate her conclusion or decision. 42 U.S.C. § 405(g). "Tr." refers to said transcript.

[3] If the claimant "receives an adverse reconsideration determination, he is entitled to an evidentiary hearing and *de novo* review by an administrative law judge." Heckler v. Day, 467 U.S. 104, 106 (1984).

the Appeals Council (Tr. 16A), which the Appeals Council twice denied, first on May 24, 2008 (Tr. 12-16), and again on July 25, 2008, after considering additional information (Tr. 4-9). District court action was thereafter timely commenced.

## STATEMENT OF FACTS

**A.     Background**

Plaintiff was born on March 11, 1990.  Therefore, she was an adolescent on October 14, 2005, the date the application was filed, and remained an adolescent through January 16, 2008, the date of the ALJ's decision.  See 20 C.F.R. § 416.926a(g)(2).  It is undisputed that Plaintiff suffers from asthma, oppositional defiant disorder and an adjustment disorder, but the severity of her impairments is disputed.

**B.     Educational History**

Plaintiff was initially referred for evaluation by the Child Study Team as a fifth grade student at PS30 due to academic and behavioral difficulties.[4]  (Tr. 173, 174.)  At that time, her attendance was poor and she had a history of being held back.  (Tr. 173, 174.)  Teachers described her as "moody quickly ranging from cooperative, friendly and helpful to aggressive, disruptive, defiant, disobedient, withdrawn, sullen, impatient, or impulsive."  (Tr. 173, 174.) According to school records: "[Plaintiff] was sometimes drowsy in class.  She demonstrated educational difficulties in all areas, particularly focusing upon tasks, and following directions. She appeared to have a low frustration tolerance and little self-confidence her academic abilities [sic]."  (Tr. 173, 174.)

---

[4] Ms. Cruz alleges that Plaintiff became disabled in February 1999, one month prior to her ninth birthday.  (Tr. 87.)

Evaluation determined that Plaintiff was eligible for special education and related services as multiply disabled (specific learning disability/emotional disability) ("MD") and the school district placed her in a resource program. (Tr. 173, 174.) Throughout the fifth, sixth, and seventh grades, however, Plaintiff's problems with academic performance continued, necessitating her transfer to the AES/TEAM Program at the start of eighth grade in October 2004. (Tr. 173, 174.)

In both April and September of the following year, Plaintiff's teachers and counselors at the AES/TEAM Program completed Individualized Education Program ("IEP") assessments reevaluating Plaintiff's educational needs. Both IEP assessments maintained the earlier classification of Plaintiff as MD (Tr. 173), but reported that Plaintiff had made progress academically and behaviorally (Tr. 107-127, 172-75). Plaintiff was responding well to directions and had become "diligent and responsible about her homework assignments." (Tr. 173, 174.) The assessment further indicated:

> [Plaintiff] had a warm and helpful attitude on most occasions. A school-wide behavior modification program, based on her specific academic and behavioral needs and goals, helps to address some of the problems she faces, has proven helpful. She gets along with her classmates and peers and enjoys helping out in class. She has built positive relationships with the staff members in the program.

(Tr. 173.) Although teachers felt that Plaintiff would continue to require a smaller classroom environment, they expressed confidence in her ability to progress academically and behaviorally. (Tr. 173.) Accordingly, the IEP assessments recommended that Plaintiff be placed in a regular education program for the ninth grade at Carpe Diem, a smaller transitional school, with supplementary aids and supports provided as needed. (Tr. 120.) Such supplementary services would be "sufficient to meet [Plaintiff's] unique needs which include deficits in attention,

communication, perception, phonetic awareness, and quantitative concepts." (Tr. 164.) The school district opined that Plaintiff would recoup any lost skills in a reasonable period of time and would not experience any significant skill regression. (Tr. 123.)

In September 2005, per the recommendation of the IEP assessment, Plaintiff began the ninth grade in a regular education program tailored to meet her own "unique needs." (Tr. 120.) Plaintiff did not complete the ninth grade; she dropped out of school in the spring of 2006 at the age of sixteen. (Tr. 28.)

**C.     Psychological Evaluations**

In February 2003, Plaintiff was evaluated by the school psychologist, Dr. Gutierrez, who administered the Wechsler Intelligence Scale for Children – Third Edition ("WISC-III").[5] The WISC-III indicated that Plaintiff had a verbal IQ of 78, a performance IQ of 83, a full scale IQ of 78, and an overall level of cognitive functioning in the borderline range. (Tr. 174, 175.) School records state that based on the test results, Plaintiff should have been functioning at the sixth grade level; however, Plaintiff's teachers assessed her academic performance to be within the fourth to fifth grade range. (Tr. 173,174.)   Plaintiff was in the sixth grade at that time.

Dr. Gutierrez also administered the DSM-IV multiaxial scale assessment[6] and diagnosed an oppositional defiant disorder and an adjustment disorder with disturbance of emotions and conduct on Axis I; psychological stress or severe problems with primary support group on Axis

---

[5] IQ test results above forty that are obtained between the ages of seven and sixteen are current for only two years. 20 C.F.R. Part 404, Subpart P, Section 112.00(D)(10). In the present case, the test was administered to Plaintiff approximately one month prior to her thirteenth birthday and two years and eight months before the start of the relevant period.

[6] The DSM-IV multiaxial scale assesses an individual's mental and physical condition on five axes, each of which refers to a different class of information. Axis I refers to clinical disorders; Axis II refers to personality disorders; Axis III refers to general medical conditions; Axis IV refers to psychological and environmental problems; and Axis V cites the individual's global assessment of functioning (GAF). American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed. text rev. 2000).

IV; and a Global Access of Functioning ("GAF") score of 50 on Axis V.[7] (Tr. 174,175.) No diagnoses were made on Axis II or Axis III.

**D.     Medical Records and Evaluations**

Dr. E.V. Medrano, Plaintiff's treating physician, noted that, since November 1995, he had treated Plaintiff for various conditions including: asthma, an upper respiratory infection, hay fever, amenorrhea, flu, and conjunctivitis. (Tr. 129.) Dr. Medrano stated that he had last treated Plaintiff in October 2005, at which time he diagnosed asthma and an upper respiratory infection. (Tr. 129, 130.)

In connection with Plaintiff's application for SSI, the Social Security Administration ("SSA") asked that Plaintiff be taken to a medical evaluation at the SSA's expense; however, Plaintiff failed to appear at this examination. (Tr. 43.) The SSA was, therefore, unable to obtain all of the medical information necessary to evaluate Plaintiff's condition. Id. Several state agency physicians and disability examiners reviewed the evidence of record but found that no disability could be established because there was no medical evidence in Plaintiff's file. (Tr. 40, 41.) For example, Dr. Samuel Kaye, a state agency physician, reviewed the evidence of record in February 2006 and concluded that there was insufficient medical evidence to make any finding regarding the severity of Plaintiff's impairment. (Tr. 40, 134) (Exhibit 3F).

---

[7] A GAF scale ranges from 0 to 100 and generally a lower score indicates a more serious mental disorder. But, a score of 0 stands for "inadequate information" and a score of 100 indicates "[s]uperior functioning in a wide range of activities . . . . [n]o symptoms." A GAF score in the range of 41 to 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 27 (4th ed. text rev. 2000).

**DISCUSSION**

A.     **Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) and must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). "Although substantial evidence is more than a mere scintilla, it need not rise to the level of a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision. See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Where the evidence is susceptible of more than one rational interpretation, it is the Commissioner's conclusion which must be upheld. Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986). If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would

have decided the factual inquiry differently." Fargnoli v. Halter, 247 F.3d 34, 38 (3d Cir. 2001); see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973). "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision."[8] Sassone v. Comm'r of Soc. Sec., 165 F. App'x 954, 955 (3d Cir. 2006) (citing Blalock, 483 F.2d at 775). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).

The court's scope of review is plenary as to questions of law. Newell v. Commissioner, 347 F.3d 541, 545 (3d Cir. 2003).

**B.      Standard for Awarding Benefits Under the Act**

Title XVI of the Act provides for the payment of disability benefits to indigent persons under the SSI program. 42 U.S.C. § 1382(a). With respect to claims filed on behalf of children:

---

[8] Throughout the evaluation, the ALJ "must give a reasoned explanation for his decision, including how he factored in evidence that arguably pointed to the opposite conclusion." Morrison ex rel. Morrison v. Comm'r of Soc. Sec., 268 F. App'x 186, 187 (3d Cir. 2008) (citing Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20 (3d Cir. 2000); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)). In Jones, the Third Circuit noted that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." Jones, 364 F.3d at 505.

>   (i)   An individual under the age of 18 shall be considered disabled for the purpose of this title if that individual has a medically determined physical or mental impairment, which results in marked or severe functional limitations, and which can be expected to last for a continuous period of not less than 12 months.
>
>   (ii)  Notwithstanding clause (i), no individual under the age of 18 who engages in substantial gainful activity. . . may be considered disabled.

42 U.S.C. § 1382c(a)(3)(C). To qualify for SSI, the claimant bears the initial burden of establishing her disability. 42 U.S.C. §§ 1382c(a)(3)(C)(i); 423(d)(5); see also Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

**C.   The Evaluation Process**

Determinations of whether a child under age eighteen is disabled, and thus eligible for SSI, are made by the Commissioner pursuant to the three-step sequential evaluation process outlined in 20 C.F.R §§ 416.924 and 416.926a.[9] The evaluation was recently summarized by the Third Circuit:

>   A child under eighteen is only eligible for SSI benefits if (1) he is not doing substantial gainful activity; (2) he has a medically determinable impairment or combination of impairments that is severe; and (3) the impairment or combination of impairments meets, medically equals, or functionally equals the severity of one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R § 416.924.

Morrison ex rel. Morrison, 268 F. App'x. 186, 187-88 (3d Cir. 2008). At the first step of the evaluation process, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[10] 20 C.F.R. § 416.924(b). If the claimant is found to be engaged

---

[9] "In making any determination with respect to whether an individual is under a disability . . . the Commissioner of Social Security shall consider all evidence available in such individual's case record, and shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability." 42 U.S.C.A. § 423(d)(5)(B).

[10] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit." 20 C.F.R. § 416.910. See also 20 C.F.R. § 416.972.

9

in such activity, the claimant is not "disabled" and the disability claim will be denied. Id. If not, the Commissioner addresses step two of the process.

At step two, the Commissioner must determine whether the claimant has a medically determinable impairment that is severe. 20 C.F.R. § 416.924(c). To satisfy the requirements of step two, the claimant must establish (1) the existence of a medically determinable physical or mental impairment, and (2) that such impairment is "severe" within the meaning of the Regulations. See 20 C.F.R. §§ 416.920a, 416.924, 416.929(b); 42 U.S.C. § 423(d)(5).

*(1) Need to Establish the Existence of a Medically Determinable Impairment.*

To demonstrate that a disability exists, the claimant must first establish the existence of a medically determinable impairment by presenting evidence that her affliction "results from anatomical, physiological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); SSR 96-4p. While subjective complaints of pain are considered, alone, they are not enough to establish disability. 42 U.S.C. § 423(d)(5)(A). Thus, "regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings." SSR 96-4p. "In the absence of a showing that there is a 'medically determinable physical or mental impairment,' an individual must be found not disabled at step two of the sequential evaluation process." Id.

(2) *Severity Determination.*

The Social Security Regulations and Rulings,[11] as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." Newell v. Commissioner, 347 F.3d 541, 546 (3d Cir. 2003) (citing Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)). According to the Regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities," 20 C.F.R. § 416.921(a),[12] or, in the case of a child, "to do age-appropriate activities," SSR 96-3p.[13]

In making the step two severity determination, the Commissioner must first evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities, or, in the case of a child, "to function independently, appropriately, and effectively in an age-appropriate manner." SSR 96-3p; 20 C.F.R. § 416.929(c). The claimant's symptoms will be determined to diminish the capacity to function to the extent that the claimant's alleged functional limitations due to his symptoms can reasonably be accepted as consistent with the objective medical evidence and

---

[11] Social Security Rulings ("SSRs") constitute the SSA's interpretations of the statute it administers and of its own regulations. Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996). SSRs do not have the force of law, id.; nevertheless, once published, they are binding on all components of the SSA. Walton v. Halter, 243 F.3d 703, 708 (3d Cir. 2001).

[12] Regulation 20 C.F.R. § 416.921(b) defines basic work activities as "the abilities and aptitudes necessary to do most jobs" and provides the following examples: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting.

[13] SSR discussions regarding "basic work activities" refer only to claims of individuals claiming disability benefits under title II and individuals age 18 or older claiming disability benefits under title XVI. However, SSR 96-3p provides that "the same principles regarding the evaluation of symptoms and their effects apply in determining whether the impairment(s) of an individual who is under age 18 and claiming title XVI disability benefits is severe under 20 C.F.R. § 416.924(d). For such an individual, an impairment(s) is considered 'not severe' if it is a slight abnormality(ies) that causes no more than minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner." Id.

other evidence in the record.[14]  SSR 96-7p; 20 C.F.R. § 416.929(c)(4).  The Commissioner then considers such findings on the functionally limiting effects of the claimant's symptoms together with all objective medical and other evidence in making the ultimate step two severity determination.  SSR 96-7p.  If a claimant is found to have a medically determinable severe impairment or combination of impairments, the Commissioner addresses step three of the sequential evaluation process.  If not, the claimant is determined to be not "disabled" and the disability claim will be denied.  20 C.F.R. § 416.924(c).

At step three, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meets, medically equals, or is functionally equal in severity to an impairment listed in the Appendix.  20 C.F.R. § 416.924(d).  A claimant's impairment medically equals a listing when "the medical findings are at least equal in severity and duration of the listed findings."  20 C.F.R. § 416.926(a).  The Commissioner will compare medical evidence in the record to corresponding medical criteria shown for the listed impairment to make this determination.  Id.

If the claimant's impairment does not meet or medically equal a listed impairment, the Commissioner will next determine if the impairment is functionally equal to the listed impairments.  20 C.F.R. § 416.926a(a).  To satisfy the "functionally equal" standard, the claimant

---

[14] In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. § 416.929(c) describes the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  Id.; SSR 96-7p.

must show that she suffers from an impairment of "listing-level" severity, meaning that the impairment (or combination of impairments) causes a "marked" limitation in two of six domains of functioning or an "extreme" limitation in one of those six domains.[15] 20 C.F.R. § 416.926a(a). The six domains are: (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for oneself, and (vi) health and physical well-being. Id. § 416.926a(b)(1). Parents and teachers may be called upon to provide information regarding a child's limitations with respect to these six domains since they see the child regularly and are able to describe the child's functioning at home, at school, and in the community. 20 C.F.R. § 416.926a(b)(3).

**D.     The ALJ's Decision**

In brief, the issue before the ALJ was whether Plaintiff is entitled to SSI under § 1614(a)(3)(C) of the Act beginning on October 14, 2005, the date the application was filed.[16] After examining the record and applying the three-step sequential evaluation, the ALJ determined that Plaintiff had not been disabled, as defined in the Act, at any time since October 14, 2005 and was therefore not entitled to SSI payments. (Tr. 28) (citing 20 C.F.R. §§ 416.906, 416.924(c)).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision, 20 C.F.R. §§ 416.924(b), 416.972, and, therefore, Plaintiff satisfied the first step of the evaluation process. (Tr. 26.) At step two, the ALJ found that

---

[15] A "marked" limitation "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." Id. § 416.926a(e)(3)(i). An extreme limitation is more than marked but does not mean a total lack or loss of ability to function. Id.

[16] The earliest month in which Plaintiff may be found eligible for SSI is the month following the month in which she filed for SSI, which in this case is November 2005. 20 C.F.R. § 416.335.

13

Plaintiff had the medically determinable impairments of asthma, oppositional defiant disorder, and an adjustment disorder, 20 C.F.R. §§ 416.924(b), 416.972, but that such impairments caused no more than minimal functional limitations and, therefore, were not severe within the meaning of the regulations, 20 C.F.R. § 416.924(c). (Tr. 26-28.) Because Plaintiff had failed to demonstrate a severe impairment, Plaintiff did not satisfy the second step of the evaluation process and, therefore, was not disabled within the meaning of the Act. Id.

In forming the basis for his opinion, the ALJ identified and discussed relevant evidence from Plaintiff's school and medical records. The ALJ acknowledged evidence concerning Plaintiff's learning and emotional disabilities, other unfavorable medical diagnoses, and the fact that some academic and behavioral difficulties still persisted in September 2009. The ALJ also discussed evidence weighing against a finding of severity, including school reports indicating, among other things, that Plaintiff had made progress academically and behaviorally and was now diligent and responsible about her homework assignments. The ALJ found that "the statements concerning the intensity, persistence and limiting effects of the [Plaintiff's] symptoms were not entirely credible." (Tr. 28.) Pursuant to SSR 96-6p, the ALJ instead placed great weight on "the finding of non-disability made by State agency medical consultants," whose opinions were "well supported and not inconsistent with the other substantial evidence" of record. Id.

E.   **Plaintiff's Appeal**

Plaintiff argues on appeal that substantial evidence in the administrative record establishes entitlement to the benefits applied for and thus requests that this Court reverse the Commissioner's final administrative decision and order the payment of benefits. Alternatively, Plaintiff argues that the Commissioner's final administrative decision is not based on the

substantial evidence of record and thus requests that this Court remand that decision and order a new hearing and a new decision.

Plaintiff alleges that the ALJ erred in finding not the slightest severe impairment and denying her claim at step two of the sequential evaluation process. Plaintiff argues that her *de minimis* burden of proof is satisfied through the evidence of record, such as the September 2005 classification of Plaintiff by school administrators as MD. Plaintiff particularly emphasizes the results of the WISC-III testing performed in February 2003, which then indicated that Plaintiff had a full-scale IQ of 78, GAF of 50, and an overall level of cognitive functioning within the Borderline Range. Plaintiff contends that an IQ below 80 constitutes a severe impairment in and of itself, according to the Regulations and Rulings authorized by the Commissioner. In further support of her position, Plaintiff cites an early behavioral description by a teacher and an early diagnosis by a school psychiatrist, both of which were made prior to her matriculation at the AES/TEAM Program and over two years prior to the start of the relevant period.

**F.     Analysis**

In McCrea, the Third Circuit held that a court reviewing a step two finding of no disability should give close scrutiny to that decision. 370 F.3d at 357. This Court finds that the ALJ's determination does not withstand such scrutiny. The ALJ did not apply the correct legal standard at step two of the sequential evaluation process, nor is his decision supported by substantial evidence. Therefore, this Court reverses and remands this case for further proceedings.

The decision of the ALJ does not conform to relevant Social Security Rulings and Third Circuit authority regarding the limited function of step two in the sequential evaluation process.

SSRs "are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). The Commissioner issued SSR 96-3p to provide guidance to disability adjudicators in determining whether a medically determinable impairment is severe. Speaking specifically about assessing the claimant's symptoms, SSR 96-3p provides:

> If the adjudicator finds that [the individual's] symptoms cause a limitation or restriction having more than a minimal effect on an individual's ability to do basic work activities, the adjudicator must find that the impairment(s) is severe and proceed to the next step in the process even if the objective medical evidence would not in itself establish that the impairment(s) is severe. In addition, if, after completing development and considering all of the evidence, the adjudicator is unable to determine clearly the effect of an impairment(s) on the individual's ability to do basic work activities, the adjudicator must continue to follow the sequential evaluation process until a determination or decision about disability can be reached.

Furthermore, SSR 85-28 provides:

> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued. In such a circumstance, if the impairment does not meet or equal the severity level of the relevant medical listing, sequential evaluation requires that the adjudicator evaluate the individual's ability to do past work, or to do other work based on the consideration of age, education, and prior work experience.

The Third Circuit has interpreted such Rulings and their corresponding Regulations to hold that "[t]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims." Newell, 347 F.3d at 546; (citing Smolen v. Chater, 80 F.3d at 1290). The Newell court further emphasized:

> An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have "no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 SSR LEXIS 19 at *6-7. Only those claimants

16

    with slight abnormalities that do not significantly limit any "basic work activity"
    can be denied benefits at step two. See Bowen, 482 U.S. at 158 (O'Connor, J.,
    concurring). If the evidence presented by the claimant presents more than a
    "slight abnormality," the step-two requirement of "severe" is met, and the
    sequential evaluation process should continue. See Smolen v. Chater, 80 F.3d at
    1290. Reasonable doubts on severity are to be resolved in favor of the claimant.[17]

Newell, 347 F.3d at 546; accord McCrea v. Commissioner, 370 F.3d 357, 360 (3d Cir. 2003) ("The burden placed on an applicant at step two is not an exacting one. . . . Any doubt as to whether this showing has been made is to be resolved in favor of the applicant."). In McCrea, the Third Circuit reaffirmed the severity standard announced in Newell and added that, in light of the low threshold for severity, findings that an impairment is not severe "should be reviewed with close scrutiny" and are "certain to raise a judicial eyebrow."[18] McCrea, 370 F.3d at 357 (citing SSR 85-28).

  Here, this Court concludes that the evidence cited by the ALJ does not constitute substantial evidence to support his determination at step two. As described supra, the step two analysis entails two sub-steps. At the first sub-step, the ALJ determined that the claimant had the medically determinable impairments of asthma, oppositional defiant disorder and an adjustment disorder. At the second sub-step, the ALJ concluded that these medically determinable impairments caused no more than minimal functional limitations and thus were not severe within the meaning of the regulations.

---

[17] SSR 85-28 states that "[g]reat care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued."

[18] Although the Commissioner's determination to deny an applicant's request for benefits at step two of the sequential evaluation process should be reviewed with close scrutiny, the Court should not apply a more stringent standard of review in these cases. McCrea, 370 F.3d at 357. The Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole. Id.

The ALJ's determination at the second sub-step is not supported by substantial evidence. The ALJ reviewed Plaintiff's school records, which show that, in September of 2005, she was classified as multiply disabled. The ALJ concluded, without explanation, that "the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not entirely credible." (Tr. 28.) The ALJ offered no evidence to support this credibility determination, nor does this Court perceive a basis for finding the Child Study Team's assessment to be not credible. The ALJ then considered the findings of non-disability made by the State agency medical consultants, which he found to be "well supported" and deserving of "great weight." (Tr. 28.) This determination also does not appear to be supported by substantial evidence. This Court's review of the record indicates that, contrary to a finding of non-disability, State agency medical consultants were unable to make any substantive findings whatsoever on the presence or absence of a disability. At least four consulting doctors determined that no disability could be established due to "[n]o [m]edical [e]vidence in [f]ile." (Tr. 40, 41.) The ALJ's conclusion that these consultants' findings were well-supported is not supported by substantial evidence.

Furthermore, this Court finds that the ALJ also erred as a matter of law when he did not apply the *de minimis* severity standard at step two of the sequential evaluation process. In his decision, the ALJ set forth the principles he followed at step two but neither mentioned the *de minimis* standard nor appeared to employ that standard. The ALJ also failed to note the Third Circuit's assertion that reasonable doubts on severity should be resolved in favor of the claimant. Having examined the ALJ's severity determination at the second sub-step of step two, in view of Third Circuit law specifying a *de minimis* severity standard, this Court does not find "such

18

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. For these reasons, this Court reverses the ALJ's decision and remands this case for further proceedings that are in accord with Newell and McCrea.

On remand, in addition to reviewing the evidence under the Third Circuit's *de minimis* severity standard, the ALJ should consider the special considerations for determining disability of children set forth in 20 C.F.R. §§ 416.924a and 416.924b. Section 416.924a provides factors to be considered by adjudicators when evaluating the effects of a child's impairment on his or her functioning, such as the standards used by the person who gave information about the child and the characteristics of the group to whom the child is being compared; how much extra help the child needs; the effects of structured or supportive settings; and, generally, how the child's functioning compares to that of children the same age who do not have impairments. For example, the ALJ did not explicitly consider the possibility that a structured or supportive setting, such as the AES/TEAM Program, might have minimized the signs and symptoms of Plaintiff's impairment and helped to improve her functioning while she acted as a participant in the Program, but that Plaintiff's signs, symptoms, and functional limitations may have worsened outside that structured setting. See 20 C.F.R. § 416.924a(b)(5)(iv)(C). These considerations are further reflected in the Social Security Rulings, which mandate consideration of a child's ability "to function independently, appropriately, and effectively in an age-appropriate manner." See, e.g., SSR 96-3p.

19

## **CONCLUSION**

For the reasons stated above, this Court reverses the Commissioner's decision and remands this case to the Commissioner for further proceedings in accordance with this opinion.

Dated: August 10, 2009

/s/ Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.